# EXHIBIT A

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX, ss

No. 11-2430

...... Lisa Murphy ..................., Plaintiff(s)

v.

Boston Scientific Corporation and Claudia Gilman
........................................., Defendant(s)

### SUMMONS



A TRUE COPY ATTEST
PDC
DEPUTY SHERIFF
Middlesex County
9/15/11
DATE OF SERVICE

To the above-named Defendant:

You are hereby summoned and required to serve upon ... Margaret G. Plaza ...........................
..................................... plaintiff's attorney, whose address is . Plaza Law Group ...........
.. 275 Grove Street, Suite 2-400, Newton MA 02466 answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at ................................... ................................................. either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ..........................................................................
the ...... twelfth ............................ day of . September ......................................................
...................., in the year of our Lord 2011 ........................................... .

RECEIVED SEP 15 2011

.................................................
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

CIVIL DOCKET # MICV2011-02430-B
Courtroom Civil B- Ct Rm 720- 200 TradeCenter, Woburn

RE: Murphy v Boston Scientific Corporation et al
TO:
    Margaret G Plaza, Esquire
    Plaza Law Group
    275 Grove Street Suite 2-400
    Auburndale, MA 02466

## SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **05/01/2013**.

### STAGES OF LITIGATION      DEADLINES

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 10/09/2011 | 10/09/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 11/08/2011 | |
| All motions under MRCP 12, 19, and 20 | 11/08/2011 | 12/08/2011 | 01/07/2012 |
| All motions under MRCP 15 | 11/08/2011 | 12/08/2011 | 01/07/2012 |
| All discovery requests and depositions served and non-expert depositions completed | 05/06/2012 | | |
| All motions under MRCP 56 | 06/05/2012 | 07/05/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/02/2012 |
| Case shall be resolved and judgment shall issue by **05/01/2013** | | | 05/01/2013 |

- The final pre-trial deadline is <u>not the scheduled date of the conference</u>.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 07/13/2011                            Michael A. Sullivan
                                                                                  Clerk of the Court
Telephone: 781-939-2748

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| MIDDLESEX, ss | SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT |

LISA MURPHY,

    Plaintiff,

v.                                                                           Civil Action No.

BOSTON SCIENTIFIC CORPORATION
AND CLAUDIA GILMAN

    Defendants.

## COMPLAINT AND JURY DEMAND

### NATURE OF THE CASE

1. Plaintiff Lisa Murphy brings this Complaint against her former employer, Boston Scientific Corporation and its manager, Claudia Gilman, seeking compensation and damages for discrimination in violation of Chapter 151B of Massachusetts General Laws. The claims include discrimination, retaliation, breach of contract, and breach of the covenant of good faith and fair dealing.

### PARTIES

2. Plaintiff Lisa Murphy, hereinafter, "Murphy," is an a single adult individual residing at 66 Milk Street, Westborough, Massachusetts.

3. Boston Scientific Corporation, hereinafter, "BSC," is a corporation organized and existing under the laws of Delaware, having its principal place of business at 1 Boston

Scientific Place, Natick, Massachusetts.

4. Claudia Gilman, hereinafter, "Gilman," is the Director of the International Legal Group at BSC at 1 Boston Scientific Place, Natick, Massachusetts.

## FACTS

5. Murphy has timely satisfied all the prerequisites to suit under G.L. c. 151B.

6. Murphy began working for BSC as legal secretary in 1999.

7. Murphy met all her obligations to BSC and received promotions throughout her employment at BSC.

8. On October 11, 2000, Murphy's then supervisor, Mr. F. Ty Edmonson, hereinafter, "Edmonson" wrote a memorandum to Gilman. See, **Exhibit A**.

9. Gilman forwarded this memorandum to BSC's General Counsel, Paul Sandman with the following endorsement, "Paul, This recommendation has my full support."

10. Beginning in 2001, BSC assigned duties to Murphy that junior counsel in the International Law Group regularly performed.

11. In 2003, Edmonson informed Murphy that BSC allocated funds to hire a new attorney for 2004.

12. In the same year, Edmonson informed Murphy that BSC had allocated funds to hire a new attorney in 2005, and informed Murphy, "That is your job."

13. Murphy later participated in a sexual harassment investigation related to Edmonson.

14. After Edmondson resigned, several months lapsed without BSC replacing Murphy's former supervisor.

15. Murphy continued to perform her job acceptably, including all the work usually assigned to junior attorneys, such as negotiating contracts related to export licensing with BSC outside counsel.

16. Neil Johnson became Murphy's supervisor in September, 2004.

17. Murphy successfully completed her law degree and inquired about BSC hiring her as an attorney.

18. At about this time, BSC hired Murphy's male colleague as an attorney.

19. Upon information and belief, the starting salary for attorneys at BSC during the relevant timeframe was 100k.

20. The male colleague had not participated in any sexual harassment investigation or made any formal internal complaint about management or Gilman.

21. During Murphy's annual review, Johnson admitted to Murphy that Gilman asked him to "strike" junior counsel duties formerly assigned to Murphy and to assign those duties to the "new attorney" that BSC had budgeted for the International Law Department in 2005.

22. Neil Johnson informed Murphy during her annual review that based upon Gilman's recommendation, BSC would not promote Murphy to an attorney position.

23. Johnson admitted to Murphy that he had engaged discussions with BSC employment attorneys about how BSC could "help" Murphy leave BSC.

24. From 2004 until August 15, 2008, BSC/Gilman created an environment hostile to Murphy in retaliation for Murphy's formal internal complaint by convening Murphy's colleagues to yell disparaging comments at Murphy, and by refusing to speak about her concerns privately when asked.

25. From 2004 until August 15, 2008, BSC/Gilman created an environment hostile to Murphy in retaliation for her formal internal complaint by excluding Murphy from meetings Murphy had formerly been invited to attend.

26. From 2004 until August 15, 2008, BSC/Gilman created an environment hostile to Murphy in retaliation for her formal internal complaint by excluding announced to Murphy's colleagues at her graduation party that Gilman intended to hire a "new attorney."

27. Gilman's failure to consider Murphy for an open attorney position upon completion of her legal studies was in bad faith.

28. In September 2005 Ms. Murphy took a medical leave due to various serious health conditions.

29. Murphy's health conditions impair her major daily functions and have required multiple surgeries and time to rehabilitate from the surgeries.

30. BSC does not dispute that Murphy was disabled.

31. Ms. Murphy long-term disability from September 2005 through August 2007 as approved by BSC.

32. By August 2007 Ms. Murphy still suffered from chronic pain, but her health had improved to the extent that she was capable of performing the essential functions of her former position at BSC easily with a defined accommodation.

33. In October 2007 Ms. Murphy submitted medical information to BSC documenting the proposed accommodation needed to transition back to work.

34. In September, 2007 Murphy requested a defined initial period of part-time work, a brief

4

hourly stretch break, and a modification to her work station .

35. In response, BSC rejected Ms. Murphy's proposal by written letter terminating her employment by letter dated October 30, 2007.

36. Upon information and belief, Murphy's position remained open and BSC sought to fill it.

37. In July 2008 Murphy reapplied for employment at BSC for a posted position of Contract Specialist.

38. Murphy was fully qualified and ideally suited to perform the position of Contract Specialist based on her prior experience at BSC.

39. Murphy informed her interviewers at BSC of her former medical leave and her need for minor accommodations to her work station.

40. On August 15, 2008 Murphy learned that BSC had chosen another candidate for the Contract Specialist position outside her protected class who did not require any accommodation.

41. Among other things, BSC's statement that the hired candidate was selected because she appeared "more enthusiastic" is a pretext for bias on the basis of disability.

42. Among other things, BSC's statement that the hired candidate was selected because she appeared "more enthusiastic" is a pretext for retaliation.

43. Among other things, BSC's statement that the hired candidate was selected because she appeared "more enthusiastic" is a pretext for bias against Murphy for having taken an FMLA leave.

44. Murphy has suffered damages as a result of the defendants' conduct.

## CLAIMS FOR RELIEF

### COUNT I - Disability Discrimination

45. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

46. Starting in August 2007, Murphy was a qualified individual with a disability within the meaning of M.G.L. Chapter 151B §1(16) and under and the Americans With Disabilities Act, 42 U.S.C. § 12112, *et seq* because she was capable of performing the essential functions of her position with reasonable accommodations.

47. In October 2007, Ms. Murphy sought reasonable and defined accommodation from BSC.

48. BSC violated M.G.L. c. 151B and the Americans With Disabilities Act, 42 U.S.C. § 12112, *et seq.* by refusing to engage in the interactive process to discuss Ms. Murphy's requests for reasonable accommodations and terminating her employment in the fall of 2007.

49. BSC violated M.G.L. c. 151B and the Americans With Disabilities Act, 42 U.S.C. § 12112, *et seq.* by failing to hire Ms. Murphy in August 2008 because she was a qualified individual with a disability within the meaning of M.G.L. Chapter 151B §1(16) or was perceived as being disabled.

50. As a direct and proximate result thereof, Ms. Murphy suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including mental suffering.

## COUNT II - Retaliation

51. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

52. BSC violated M.G.L. c. 151B by retaliating against Ms. Murphy after she complained about her supervisor's sexual harassment, and after she participated in a sexual harassment investigation by refusing to promote her to the position of attorney where other similarly-situated male graduates from Suffolk Law School who had not participated in such complaints were hired as attorneys.

53. BSC violated 151B by retaliating against Ms. Murphy after she sought reasonable accommodations by refusing to engage in the interactive process.

54. BSC engaged in unlawful acts of retaliation against Ms. Murphy, in violation of Family and Medical Leave Act - 29 U.S.C. § 2601, *et seq.* and the Americans With Disabilities Act, 42 U.S.C. § 12112, *et seq.*

55. As a direct and proximate result thereof, Ms. Murphy suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including mental suffering.

## COUNT III - Breach of Implied Contract/Unjust Enrichment

55. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

56. An implied-in-fact contract was entered into by the parties whereby Murphy would successfully complete her law degree, during which time BSC would receive the benefit

from Murphy's legal studies by expecting (and receiving) work commensurate with that of a junior attorney, while compensating Murphy as a legal secretary. **Exhibit A.**

57. At all relevant times, Plaintiff performed or stood ready, willing, and able to perform her obligations under their Agreement.

58. Defendants breached the Agreement by creating a hostile work environment following Murphy's formal internal complaint.

59. Defendants breached the Agreement by refusing to consider Murphy for an open attorney position for which she was qualified in good faith.

60. As a direct and proximate result defendants' actions, Murphy was damaged.

### COUNT IV - Breach of the Covenant of Good Faith and Fair Dealing

61. Plaintiff hereby realleges and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

62. All implied contracts in Massachusetts include an implied covenant of good faith and fair dealing, which requires that neither party take any action that will deprive the other of the benefit of the implied contract.

63. BSC understood that at least one of the purposes of the implied contract was for the parties to the contract to mutually benefit from the development of Murphy's education and to "foster goodwill" without favoring any of the parties' rights to the detriment of the other parties.

65. Defendants further understood that Murphy wanted to maximize the value of her legal education by completing her law degree while working for the company for which she

would eventually be hired as an attorney.

66. Murphy invested countless personal hours developing her knowledge and applying her expertise in the types of contracts and litigation BSC junior attorneys routinely handle.

67. In breach of the covenant of good faith and fair dealing, and as a direct and proximate cause thereof, Defendants have damaged Murphy.

**WHEREFORE**, Plaintiff demands judgment in her favor and prays that this Court:

a. award Plaintiff compensatory damages, including lost wages and benefits, emotional distress, interest on the compensatory damages;

b. award punitive damages for Defendant's willful conduct;

c. award Plaintiff's reasonable attorneys' fees; and

d. grant such other and further relief as this Court deems just.

Respectfully submitted,

Lisa Murphy
By her attorney,

Date: July 7, 2011

Margaret G. Plaza, BBO # 668467
Plaza Law Group
275 Grove Street, Suite 2-400
Newton, MA 02466
(617) 663-5701 (telephone)
(617) 663-4801 (facsimile)
mplaza@plazalawgroup.com

# EXHIBIT A

*[Handwritten note at top:]* Claudia — I agree with you and support Ty's recommendation. This is thorough and persuasive.

*[Stamp:]* RECEIVED OCT 20 2000 PAUL W. SANDMAN

# Boston Scientific

**INTEROFFICE MEMORANDUM**
**PRIVATE AND CONFIDENTIAL**

DATE: October 11, 2000

TO: Claudia Gilman

FROM: F. Ty Edmondson

SUBJECT: Lisa Murphy – Tuition costs

*[Handwritten note in right margin:]* Paul — This recommendation has my full support. We do have available funds in our ILD 2000 budget. We appreciate your endorsement, please. Thank you very much. Claudia

Claudia:

As you know, Lisa Murphy is going to be applying to law school. In order to prepare for her LSATs, she has just completed a LSAT review/prep class through Kaplan. I understand the cost of this course is approximately $1,000.00. I recommend that we offer to reimburse Lisa for the cost of the course, especially as she has now taken the LSAT.

**Background**

Lisa's background, as reflected in her attached resume, would make her a compelling candidate for BSC's International Legal Department if she successfully completes her legal education. She speaks three languages and has a great deal of practical and personal experience with markets BSC may enter in the next 5-10 years in Eastern Europe/Russia.

**Analytical and Writing Skills**

Lisa has consistently displayed excellent analytical skills as a member of the International Legal Department. She has a very real, active curiosity about the reasons attorneys make decisions and has shown a marked ability to anticipate how we arrive at those decisions. She is also interested in a variety of subjects, from contracts to litigation.

**Performance to Date**

Lisa's performance to date with the company has been outstanding. She is a dedicated and hard-working person, more than willing to adjust her own schedule to the company's needs, and enjoys working in an international business environment. The International Business team recently used Lisa as a model for HR in their efforts to recruit new support staff.

I would strongly recommend Lisa to BSC as an international attorney upon her completion of her legal studies.

### BSC Education Policy

Unfortunately, the standard BSC education policy (copy attached) would not seem to provide reimbursement for Lisa's LAT course. However, I checked with Bill Shaw and he indicates Paul Sandman paid for his LSAT prep class out of the Legal budget as a matter of principle (and kindness). I also ran the idea by Andrea Sinclair and she sees no problem with us adopting a similar approach either from a BSC policy standpoint or in particular regards to Lisa.

I think supporting this expansion of talents and experience is the right thing to do. Beyond that, I think it is a very efficient way of fostering employee retention, simply on the ratio of the amount of good psychic points we earn with the employee per dollar of expense.

If you approve, I would like to privately share our support with Lisa.

Workforce Prioritization Worksheet
Executive Committee Member: _____ Jeff Goodman

Late Spring/Summer 2005

| Planned Hire Date (Q1,Q2,Q3,Q4) | # | Business Title | Location | Function | Functional Approval Received From (Insert name) | Business Unit | Hiring Manager | Indicate Add or Replacement. Do not forecast replacements | Regular or Temp | General Business Driver (1,2,3,4) | Specific Business Driver | Business Priority A or B | Comments: specific business initiative, core business, or project; impact of not filling, special skills required, etc. | Is this position budgeted? (Y/N) | CC# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Q3 | 1 | Counsel | EU - TBD | Legal | | Int'l HQ ↓ Paris | Laurie Weberman ↓ Senior Counsel | Add | Regular | 1 | Base Business | A | Critical role to support aggressive business growth. Europe too large and complex to service with current resources. Ten new countries added. Compliance potentially at risk and delay in filling this position compromises our ability to service adequately. This lawyer will provide legal support at the country and regional level (especially Nordic go-direct and Southern Europe teams), provide timely legal throughput on all business projects and integrations, and provide regular, critical training on legal issues to managers and employees. Urgent to fill immediately also to support:<br><br>• near term compliance initiatives by related functions (Regulatory, Quality),<br><br>• Clinical programs, as well as<br><br>• steady stream of NBD initiatives requiring input and analysis under OUS laws.<br><br>Will recruit for a lawyer who can be highly effective and productive immediately, with experience in the healthcare industry (device and pharmaceutical sectors), and regional expertise/language. | N | 10031 |

| # | | | | | | Add/Regular | Regular | 1 | Base Business | A | | Y, Q1 '06 | | 10031 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 Q3 | Counsel | Natick | Legal | Int'l Operations | Claudia Gilman | Add | Regular | | | A | Critical role to support aggressive intercontinental business growth, particularly in big countries, Middle East and Latin America. Intercon is too large and complex to service with current resources. Compliance potentially at risk and delay in filling this position compromises our ability to service adequately. This lawyer will provide legal support at the country and regional level (especially Greece go-direct and Middle East teams), provide timely legal throughput on all business projects and integrations, and provide regular, critical training on legal issues to Intercon's managers and employees. Urgent to fill immediately also to support:<br>• near term compliance initiatives by related functions (Regulatory, Quality),<br>• Clinical programs, as well as<br>• steady stream of NBD initiatives requiring input and analysis under OUS laws (many coming out of Israel).<br>Will recruit for a lawyer who can be highly effective and productive immediately, with experience in the healthcare industry (device and pharmaceutical sectors), and regional expertise/language. | Y, Q1 '06 | | |
| 3 Q4 | Admin | France | Legal | Int'l Operations | Laurie Weberman | Add | Regular | | | | Large increase in country support required - needed to support Legal counsels and provide certain training to local country administrative assistants. | Yes | | |
| 4 Q4 | Admin | Natick | Legal | Int'l Operations | Claudia Gilman | | Regular | | | | Large increase in country support required needed to support Legal counsels and provide certain training to local country administrative assistants. | Yes, Q1 '06 | | 10031 |
| 5 | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | |

**Notes:**

Business Driver: Select which of the following most appropriately describes the need for this position:
1) Supports Base/Core Business for 2005 and first half 2006
2) Supports a Key Business Initiative
3) Related to Integration of '05 Acquisition
4) Supports the BSC Strategic Investment List

Headcount Priority A or B:  A indicates a *Must Have* priority, B indicates a *Nice to Have*.
A) Must Have
  Supports 2005 Revenue and/or Operating Results
  Supports Q2-Q4 Critical Programs
  Integration support for approved acquisitions
  Part of the BSC Strategic Investment List with "time to first revenue" in 2006
  Supports near term compliance items in Regulatory and Quality

B) Nice to Have
  Longer term, 2007/2008, impact with project identified
  Acceleration of Planned Acquisition Integration/Implementation
  Remaining BSC Strategic Investment List, "time to first revenue" and beyond