# Exhibit B

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

9/7/2010

## - DISMISSAL and NOTIFICATION of RIGHTS -

| To: | Denise A. Chicoine, Esq.<br>Rosenberg, Schapiro, Englander, Chicoine & Leggett<br>44 School Street, Suite 800<br>Boston, MA 02108 | Case: Lisa Murphy v. Boston Scientific Corporation<br>MCAD Docket Number: 08SEM02626<br>EEOC Number: 16C-2008-02531<br>Investigator: Victor M. Posada |
|---|---|---|

Your complaint has been dismissed for the following reasons:

X   The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

X   Other (See enclosed Disposition-Recommendation)

### - NOTICE of APPEAL -

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. Attention: Nancy To.

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

_____           9/7/10
Sunila Thomas-George                           Date
Investigating Commissioner

Cc:

Laura Rosenbaum, Esq.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109

# INVESTIGATIVE DISPOSITION

| | |
|---|---|
| Case Name: | Lisa Murphy v. Boston Scientific Corporation |
| MCAD Docket No.: | 08SEM02626 |
| EEOC Docket No.: | 16C-2008-02531 |
| No. of Employees: | 25+ |
| Investigator: | Victor M. Posada, Housing Supervisor |
| Recommendation: | **Lack of Probable Cause** |

## Introduction

On August 25, 2008, Lisa Murphy, the Complainant, filed a complaint with this commission alleging that in October 2007, she sought a reasonable accommodation from her employer, Boston Scientific Corporation, and by letter dated in response on October 30, 2007, she was terminated from employment. Complainant also alleges that in July 2008, she reapplied for employment, and she was not chosen for the position. Complainant alleges that Respondent discriminated against her based on her disability or perceived disability and in retaliation for asking for a reasonable accommodation. The Complainant alleges discrimination in violation of M.G.L. c. 151B, §§ 4 (16) and (4), and The Americans with Disabilities Act.

## Complainant's Allegations

Complainant alleges that she began working for Boston Scientific in September 1999 as a legal secretary. She was on medical leave for approximately one month in the spring of 2004. In May 2005 the Complainant graduated from law school.

In 2005, Complainant began experiencing a series of chronic health issues[1], not related to work, which required her to take an extended medical leave starting in September 2005. The Complainant attempted to return to work in August 2007. Complainant alleges that respondent refused to grant any accommodation and terminated her employment on October 31, 2007.

In the Summer of 2008, the Complainant re-applied for the vacant position of Contract Specialist, he was not re-hired for such position. Complainant alleges that the reason she was not rehired was in retaliation for requesting a reasonable accommodation and or because she was perceived as a disabled person due to her medical leave of absence.

---

[1] At the time the Complainant had a herniated disk in her spine.

Respondent's Position

Respondent states that Complainant started her medical leave on September 20, 2005. Between April 2006 and September 2007, Respondent did not receive any updates or further information from Complainant and had no indication of whether she wished ever to return to work or whether she would be able to do so. The Complainant continued to accept long-term disability benefits.

Respondent states that as September 2007 approached, Respondent's Human Resources Department prepared to send Complainant a letter indicating that the two-year leave period[2] was about to expire, and her employment would terminate if she did not return to work or provide information that would enable the Company to make a good faith effort to return her to a similar position based on her condition and business conditions.

Respondent states that in September 2007, Ms. Murphy, apparently aware that she was about to reach the two year limit under Respondent's policy limiting the length of leaves of absence, contacted UnumProvident, the Company's disability leave insurer, and indicated she was interested in returning to work. Respondent states that it became aware of this phone call from Complainant to Unum on September 13, 2007. Respondent also states that the Complainant did not contact Respondent directly.

Respondent states that after learning of her phone call to Unum, Respondent sent a letter to the Complainant reminding her of the policy limiting leaves of absence to two years.

Respondent also states that although it was only days before September 19, 2007 when Complainant's employment would end under the policy and although the Company had not heard from the Complainant in more than a year, it gave her until October 2, 2007 to advise the Company of whether she was interested in and able to return to work, with or without reasonable accommodation. The letter informed the Complainant that if she provided information from her health care provider, the Company would evaluate that information and contact her regarding her employment status. Respondent states that the Complainant responded by telephone, indicating that she wanted to resume work. She did not identify any particular job in which she was interested or any open positions for which she was qualified. Her doctor subsequently provided information indicating Complainant could return to work, if her schedule were limited to twenty hours a week for six months. There was no indication of whether, after that six-month period elapsed, she would be able to work full-time, even with other accommodations. In addition, Complainant would need a five minute break every hour and various ergonomic adjustments to her work space.

---

[2] Respondent's written policy states that for reasons of administrative efficiency, a leave of absence cannot exceed two years. The policy states in part that "...An employee's employment shall terminate in cases in which an employee has exhausted his or her leave rights under FMLA or any other law, which in no event shall exceed two years (730) continuous calendar days) in a rolling 36-month period unless prohibited by law or [the Company] determines that special circumstances warrant an exception from this policy".

Respondent states that although the Complainant had not identified any available positions for which she was qualified, Respondent took the proactive step of looking for open administrative assistant positions. Respondent states that there was only one open administrative assistant position. That position was in the Legal Department. Respondent also states that given the hiring restrictions in place at the time, the very existence of a fulltime opening evidences that the position was not compatible with an extended part-time schedule. The only available position was a full-time position that in addition could work overtime whenever necessary.

Respondent states that what the Complainant was asking for, half-time schedule, could not be accommodated for the only open position that Complainant could have been qualified for. Respondent states that because there were no positions in which Complainant could reasonably be accommodated and because she had already exceeded the Company's policy limiting leaves of absence to two years, her employment was terminated.

Respondent further states that her termination from employment did not affect her ability to receive long-term disability benefits and that she was free to apply for employment at with Respondent at any time.

Respondent states that in July 2008, the Complainant applied for a job as a Contract Specialist with Respondent. The position, was in the Corporate Sales Operations Department and located in the Company's Marlborough, Massachusetts facility. It involved supporting the Company's sales operations personnel in analyzing, preparing, and reviewing contracts, customer proposals, and related documents. This position did not report to the Company's Legal Department, and the Legal Department (in which the Complainant had previously worked) did not have any involvement in the hiring decisions for this position.

Respondent also states that because of the nature of the work involved, Respondent had a preference for a candidate with paralegal experience, which was indicated in the job description. Respondent also states that, the hiring managers had concerns about hiring an individual with a J.D. for the opening because they believed that some persons with a law degree, which the Complainant had, might be interested in using the Contract Specialist position as a stepping-stone toward a legal position, and therefore would be less likely to stay in the job for an extended period. The Complainant was not hired for the position because she was not the most qualified candidate for the position of Contract Specialist.

Summary of Investigation and Analysis

Reasonable accommodation

It is undisputed that the Complainant was on a leave of absence for almost two years. On September 20, 2005, Complainant took medical leave to address a non-work-related back injury. She was granted leave under the FMLA. She also started to receive short-term

disability benefits. Her leave was approved through October 14, 2005. Despite this initial schedule and other suggestions by Complainant that she would be taking a relatively brief leave, the leave continued. Complainant's FMLA leave period expired when her maximum period of twelve weeks of FMLA leave within twelve months was exhausted. Her 180 day short-term disability period subsequently expired, after which she eventually qualified for long-term disability benefits.

Investigation revealed that during this period, Complainant's leave was repeatedly extended due to new medical information, at times on short notice.

• In December 2005, Complainant indicated that she might need another month of leave, but did not know definitively.
• In early January 2006, Complainant indicated that she was not seeing her surgeon until January 27 and would not have a return-to-work date before then.
• On March 6, 2006, Complainant indicated that she had no definitive information about her return-to-work but would provide a further update soon.
• On April 9, 2006, Complainant left a voicemail for Respondent stating that she was scheduled for surgery on April 20. She indicated that after the surgery, she would have a better idea of her return-to-work date.
• On April 12, 2006, she indicated that she was having surgery on April 20 and had told her manager that "in most cases, patients are usually back to normal activity within two weeks of the procedure." She did not provide a specific return-to-work date, but indicated it was her "intention to return to work in early May."
• That was followed by Complainant's doctor's authorization, which indicated she would be able to return to work at a date "not yet determined, no sooner than 6/1/06."

Investigation revealed that because Complainant's anticipation to return to work within a matter of weeks after she first was out, her position remained vacant. By April 2006, more than six months after Complainant commenced her leave, Respondent began to look for a replacement. Respondent informed the Complainant that the position remained hers if she returned to work before it was filled. The Complainant did not return. Investigation revealed that in November 2006, fourteen months after Complainant's leave began, a replacement was hired, and there was no longer an identified position to which the Complainant could return. The Complainant continued her leave of absence. She therefore nominally remained an employee with no reinstatements rights. The Complainant continued receiving long-term disability benefits.

Investigation revealed that in the fall of 2007, Respondent was undergoing a significant reduction in force, designed to eliminate approximately 2,300 positions - about thirteen percent of the Company's workforce. Headcount restrictions at the time were so tight that the Company adopted a protocol to the effect that all requests for new hires, even replacements for departing employees, had to be submitted to and approved by the Company's Executive Steering Committee, composed of the highest level management of

the Company. In other words, every new position in the Company had to be approved individually by the highest level of Company management.

Investigation revealed that at that time, almost two years absent from work, the Complainant indicated she was interested in returning back to work. There was no position for her to return to. The only new position that she could be considered for required a full time employee that occasionally could work overtime. Given Complainant's restrictions, to work part time for over six months, she was not qualified for the position that required a full time employee; therefore, she was not a qualified handicapped person because she could not perform the essential function of the new position that required a full time employee that occasionally would also work overtime. Therefore Complainant was terminated from employment effective October 31, 2007.

Failure to Hire

It is undisputed that in July 2008, the Complainant applied for a vacant Contract Specialist position. The Complainant was offered an opportunity to interview for the position. Investigation also revealed that there were several other qualified applicants for the position, and several, including the Complainant, were interviewed. The final hiring decision was based on the applicants' resumes and interviews. The successful candidate was a then-current employee of Respondent. Her resume reflects that she had more than four years of experience as a paralegal between two different jobs, as well as more than three years of experience as a legal assistant for Respondent. Her experience compared with that of Complainant's, indicates that she was more qualified for the position. The interview team were also concerned that Complainant, who had her J.D., may have been intending to use the position as a means of advancement and would not be interested in staying in the position long-term.

Retaliation

Investigation revealed that Complainant's termination did not occur because she requested an accommodation. Therefore, she cannot demonstrate a causal connection. She was terminated from employment as a result of Respondent's written policy of terminating employees who had been on leave for two years or more and who could not demonstrate that additional leave would be a reasonable accommodation.

The Complainant cannot demonstrate that failure to hire her for the position she applied for in July 2008, was in retaliation or related to her disability/perceived disability. She was not the most qualified person for the position; therefore Respondent had no obligation to hire her over the most qualified candidate who was selected.

Conclusion

A finding of Lack of Probable Cause is recommended against Boston Scientific Corporation for discrimination based on disability and retaliation.

_____
Victor M. Posada
Investigator


Disposition

Pursuant to section 5 of M.G.L. c. 151B of the Massachusetts General Laws, and in conformity with the foregoing findings, I have this day determined that a **Lack of Probable Cause** is being rendered on this case. Complainant will be afforded the opportunity to appeal this decision.

_____        9/7/10
Sunila Thomas-George                                Date
Investigating Commissioner