UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LISA MURPHY,

    Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION,

    Defendant.

Civil Action No. 4:11-cv-40188-GAO

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
<u>MOTION TO DISMISS IN PART PLAINTIFF'S AMENDED COMPLAINT</u>**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Boston Scientific Corporation ("BSC") submits this memorandum of law in support of its Motion to Dismiss in Part Plaintiff Lisa Murphy's Amended Complaint ("Amended Complaint" or "Am. Compl.").

**<u>INTRODUCTION</u>**

Count I of the Amended Complaint alleges that Ms. Murphy was a qualified individual with a disability and that BSC discriminated against her based on that disability when it did not hire her for a job opening in August 2008. Count II alleges that BSC did not hire her for that job opening in retaliation for her having sought reasonable accommodations in 2007 near the end of a past period of employment with BSC. Although these assertions are vigorously disputed by BSC, Ms. Murphy pursued them in a timely manner and properly exhausted administrative procedures concerning them. Therefore, if the allegations ended there, this motion would not be necessary.

The Amended Complaint, however, goes much farther by attempting to raise claims that greatly expand the scope of this dispute and the discovery that would be necessary. Those further claims are legally insufficient and should be dismissed. It is important to limit the scope of the case

1

at this point to the properly pleaded aspects to avoid the need for the parties to engage in wide-ranging discovery concerning long past events that cannot support legally sufficient claims.

There are two basic defects that greatly affect the scope of the Amended Complaint. First, if expansively read, the Amended Complaint includes as part of Count II a claim of retaliation related to an internal sexual harassment complaint by Ms. Murphy in 2004 during her employment with BSC. Ms. Murphy did not include such an allegation of retaliation in the necessary administrative complaint. An allegation of retaliation for pursuing an internal sexual harassment complaint in 2004 is a far cry from an allegation of retaliation based on a request for reasonable accommodations related to a disability in 2007. It is too remote to be considered exhausted by an administrative proceeding concerning the allegation of disability-related retaliation.

Second, the Amended Complaint attempts to avoid statute of limitations restrictions and administrative exhaustion requirements applicable to discrimination and retaliation claims by making vague claims of the existence and breach of an implied contract (Count III) and a related implied covenant of good faith and fair dealing (Count IV). This effort to make an end run around the statute of limitations and the administrative exhaustion requirements for discrimination and retaliation claims under Chapter 151B of the Massachusetts General Laws ("Chapter 151B") should be rejected for a number of reasons, including the failure to assert the elements of a contract, the failure to state a claim upon which relief can be granted, the statute of frauds, the failure to satisfy even the extended six-year period of limitations applicable to contract claims and the well-recognized preclusion of the use of the implied covenant of good faith and fair dealing to pursue discrimination and retaliation claims.

For the reasons stated below, BSC requests dismissal of the portion of Count II that is predicated on Ms. Murphy's 2004 internal sexual harassment complaint and all of Counts III and IV.

## FACTUAL BACKGROUND

Ms. Murphy was employed by BSC as a legal secretary from 1999 to 2007. Am. Compl. ¶¶ 5, 39. In 2000, she took an LSAT review/prep class through Kaplan. *Id.*, Ex. A. BSC elected to pay the costs of that course after her supervisor, Ty Edmondson, recommended reimbursement. *Id.* Ms. Murphy then attended law school, all while employed by BSC. *Id.* ¶ 20.

In 2004, Ms. Murphy participated in a sexual harassment investigation related to Mr. Edmondson. *Id.* ¶ 16. He left the company in April 2004. *Id.* ¶ 17; MCAD Complaint ("MCAD Compl.") ¶ 8, attached as Exhibit A to the Declaration of Robert M. Hale ("Hale Decl.").[1] She was subsequently supervised by Neil Johnson. Am. Compl. ¶ 19.

During Ms. Murphy's 2004 annual review, Mr. Johnson allegedly "admitted to Murphy that [the head of the International Legal Department] asked [him] to 'strike' junior counsel duties formerly assigned to Murphy and to assign those duties to the 'new attorney' that BSC had budgeted for the International Legal Department in 2005." *Id.* ¶ 21. Mr. Johnson also allegedly informed Murphy that "based upon [the] recommendation [of the head of the International Legal Department], BSC would not promote Murphy to an attorney position." *Id.* ¶ 22.

In May 2005, Ms. Murphy completed her law degree. *Id.* ¶ 20; *see also* MCAD Compl. ¶ 9. Also in May 2005, Ms. Murphy alleges that she inquired about BSC hiring her as an attorney. Am. Compl. ¶ 20; *see also* MCAD Compl. ¶ 9. Ms. Murphy alleges that she was informed "at that time" that the director of the legal department would not hire her as an attorney. *See* MCAD Compl. ¶ 9.

---

[1] The Court may consider the MCAD complaint without converting this motion into a motion for summary judgment because (1) "its content determines the parameters of her civil complaint," *Edwin v. Blenwood Ass'n*, 9 F. Supp. 2d 70, 72 (D. Mass. 1998), and (2) it is a public record. *See Chatman v. Gentle Dental Ctr.*, 973 F. Supp. 228, 232 (D. Mass. 1997) ("[O]n a Rule 12(b)(6) motion, the court may consider public records and other documents referred to in the complaint, without treating the motion as one under Rule 56. The MCAD Charge is a public record and is also referred to in the complaint." (citation omitted)); *see also Bedall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document . . . , that document effectively merges into the pleadings"); *cf. Fant v. New England Power Serv. Co.*, 239 F.3d 8, 11-12 (1st Cir. 2001) (citing *Edwin*, *Chatman* and *Bedall* favorably).

In September 2005, Ms. Murphy began a medical leave. Am. Compl. ¶ 32. In September 2007, she requested to come back to work. *Id.* ¶ 38. At that point, she had not been working at BSC for two years and was, at least at that time, unable to work full time. *Id.* ¶¶ 35, 38. In a letter dated October 30, 2007, BSC notified Ms. Murphy that her employment was terminated. *Id.* ¶ 39.

In July 2008, Ms. Murphy applied for a position with BSC as a "Contract Specialist." *Id.* ¶ 43. BSC chose another candidate for the position on August 15, 2008. *Id.* ¶ 46.

Ms. Murphy filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), which she signed on August 22, 2008. *See* MCAD Compl. In her MCAD complaint, she alleged discrimination and retaliation in 2007 and 2008 on the basis of disability. *See* MCAD Compl. ¶¶ 24-26. The MCAD issued a lack of probable cause finding. *See Murphy v. Boston Scientific Corp.* (MCAD Sept. 7, 2010) ("MCAD Investigative Disposition"), Hale Decl., Ex. B.[2] Approximately ten months later Ms. Murphy filed this lawsuit, alleging not only discrimination and retaliation "in or about August 2008" on the basis of disability, but also (1) retaliation "in or about August 2008" tied, at least impliedly, to her 2004 internal sexual harassment complaint and (2) contract claims loosely connected to the same sexual harassment complaint and its supposed impact on BSC's alleged agreement to promote her. *See* Am. Compl. ¶¶ 7-31; 55; 60-62; 65-69. The new retaliation claim is unexhausted. The contract claims are inadequately pleaded, fail as a mater of law, and are barred by the statute of frauds and statute of limitations.

## ARGUMENT

### I. STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must set forth factual allegations "plausibly suggesting" that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] Because the MCAD Investigative Disposition is a public record, the Court may consider it without converting this motion into a motion for summary judgment. *See* n.1 *supra*.

544, 557 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. Legal conclusions can only "provide the complaint's framework, . . . they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). "[T]hreadbare recitals of a cause of action's elements supported by mere conclusory statements" are insufficient to overcome a motion to dismiss. *Id.*

## II. THE COURT SHOULD DISMISS THE PORTION OF THE STATUTORY RETALIATION CLAIM THAT IS PREDICATED ON MS. MURPHY'S 2004 INTERNAL SEXUAL HARSSMENT COMPLAINT

Ms. Murphy alleges that BSC retaliated against her in violation of Massachusetts General Laws, Chapter 151B by not rehiring her in or about August 2008. Am. Compl. ¶ 55. The Amended Complaint does not make clear whether this statutory retaliation claim is predicated on the 2004 internal sexual harassment complaint, Ms. Murphy's disability status, or both. To the extent that the claim is predicated on Ms. Murphy's 2004 internal sexual harassment complaint, it is unexhausted and should be dismissed.

A plaintiff pursuing claims under Chapter 151B must first exhaust those claims by filing a complaint of discrimination with the MCAD within 300 days of the complained-of conduct. *See* Mass. Gen. L. ch. 151B, § 5; *see also Chatman v. Gentle Dental Ctr.*, 973 F. Supp. 228, 233 (D. Mass. 1997) (describing the exhaustion requirement); *Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 1021 & n.1 (1996) (same). Where a plaintiff fails to exhaust her claims through the MCAD complaint process, the unexhausted claims should be dismissed. *See Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (dismissing hostile environment harassment claims where MCAD complaint raised claims of discrimination based on protected class); *Conroy v. Boston Edison Co.*, 758 F. Supp. 54, 60 (D. Mass. 1991) (finding that allegations of new acts of discrimination were could not be pursued where complainant failed to allege those acts in MCAD complaint); *Cogen v.*

5

*Milton Bradley Co.*, No. 86-0263-F, 1989 WL 81067, at *5 (D. Mass. Jan. 12, 1989) (dismissing hostile environment claim where administrative charge claimed only disparate treatment); *Riebold v. Eastern Cas. Ins. Co.*, No. 97-00306, 1997 WL 311523, at *3-4 (Mass. Super. Ct. June 4, 1997) (dismissing sex discrimination claim where plaintiff failed to articulate particulars in support of her claim in MCAD complaint).

An allegation of retaliation predicated on the 2004 internal sexual harassment complaint is clearly outside of the scope of Ms. Murphy's 2008 MCAD complaint. The MCAD complaint identifies three alleged violations of Chapter 151B, all related to disability: (1) "refusing to engage in the interactive process to discuss Ms. Murphy's requests for reasonable accommodations and terminating her employment in the fall of 2007," MCAD Compl. ¶ 24, (2) "retaliating against Ms. Murphy after she sought reasonable accommodations and at the time she reapplied for employment in August 2008," *id.* ¶ 25, and (3) "failing to hire Ms. Murphy in August 2008 because she was a qualified individual with a disability within the meaning of M.G.L. Chapter 151B §1(16) or was perceived as being disabled." *Id.* ¶ 26.

Although the factual background portion of the MCAD complaint vaguely references the 2004 internal sexual harassment complaint, it does not allege discrimination or retaliation on that basis. The decision to pursue disability-based claims only was made at a time when Ms. Murphy was represented by counsel. *See* MCAD Compl., "Charge of Discrimination." Not surprisingly, the MCAD's findings, issued after it conducted an investigation, also reference only the disability allegations. *See generally* MCAD Investigative Disposition. An allegation of discrimination or retaliation on the basis of disability is so clearly different from an allegation of retaliation following a sexual harassment complaint that a complaint based on the former does not satisfy the administrative filing requirements with respect to the latter.

6

Ms. Murphy made a choice when filing her MCAD complaint three years ago, with the advice of counsel, not to pursue a retaliation claim on the basis of her sexual harassment complaint. She cannot now bring up such a stale allegation. The purpose of the MCAD process is to allow a mechanism for prompt notice and investigation of complaints of discrimination, in part to "create an opportunity for early conciliation." *Lattimore*, 99 F.3d at 464. Allowing Ms. Murphy to proceed now on a complaint that was not exhausted in 2008 when it should have been would seriously prejudice BSC, and in any event, is not permitted. *See id.* (dismissing unexhausted claims); *Conroy*, 758 F. Supp. at 60 (same); *Cogen*, 1989 WL 81067, at *5 (same); *Riebold*, 1997 WL 311523, at *3-4 (same).[3]

### III.  THE COURT SHOULD DISMISS BOTH COMMON LAW CLAIMS

**A.  The Implied Contract Claim Fails to Assert the Elements of a Contract, Fails to State a Claim Upon Which Relief Can Be Granted and Is Barred by the Statute of Frauds and the Statute of Limitations**

Ms. Murphy claims in Count III that an implied contract was created "whereby [she] would successfully complete her law degree, during which time BSC would receive the benefit from Murphy's legal studies by receiving work regularly performed by a junior attorney, while

---

[3] Additionally, to survive a motion to dismiss, a plaintiff must allege a prima facie case of Chapter 151B retaliation, including that (1) plaintiff engaged in an activity protected by Chapter 151B, (2) defendant took an adverse action against plaintiff, and (3) a causal connection exists between the protected activity and the adverse action. *See Rivera-Colon v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011). Even aside from her failure to exhaust, Ms. Murphy has not adequately pleaded a causal connection between her 2004 sexual harassment complaint and the 2008 decision not to hire her. To plead causation, the plaintiff must plead facts from which an inference of discriminatory animus can be drawn. *See Gil v. Vortex*, LLC, 697 F. Supp. 2d 234, 243 (D. Mass. 2010). Specifically, the plaintiff must either allege retaliatory motive on the part of the employer or temporal proximity sufficient to justify an inference of retaliatory motive where no other motive is alleged. *See id.* Ms. Murphy's only allegation connecting her 2004 sexual harassment complaint to her August 2008 nonhire is a conclusory statement that BSC "retaliat[ed] against" her. Am. Compl. ¶ 55. This conclusory allegation does not support a reasonable inference that BSC retaliated against Ms. Murphy for lodging a sexual harassment complaint. *See Knight v. Continental Tire N. Am., Inc.*, No. 10-cv-02915, 2011 WL 1155090 (D. Colo. Mar. 29, 2011) (dismissing retaliation claim where plaintiff alleged that his "serious medical condition had a causal connection with Defendant's adverse actions towards him," and medical leave predated adverse actions by nine months to one year). Here, there is no allegation of retaliatory motive and the alleged retaliatory act postdates Ms. Murphy's sexual harassment complaint by more than three years, a period that is far too lengthy to give rise to a causal connection. *See id.* Because no causal connection is alleged, Ms. Murphy's claim of retaliation on the basis of her sexual harassment complaint should be dismissed, regardless of exhaustion. *See Gil*, 697 F. Supp. 2d at 243 (granting motion to dismiss where all elements of retaliation not properly pleaded).

7

compensating Murphy as a legal secretary." Am. Compl. ¶ 60. She refers to this alleged implied contract as the "Agreement." According to Ms. Murphy, BSC breached the "Agreement" by:

- "refusing to hire Murphy for a 'new attorney' position as Edmonson [sic] represented to Murphy BSC would do upon completion of her legal studies," *id.* ¶ 62(a);

- "creating a hostile work environment following Murphy's formal internal complaint," *id.* ¶ 62(b);

- "refusing to hire Murphy as an attorney where another similarly-situated male graduate from Suffolk Law School, Bill Shaw, who had not participated in such complaints was hired as an attorney immediately upon graduation, without requiring that [he] demonstrate satisfactory bar results before hiring him as an attorney," *id.* ¶ 62(c);[4]

- "'striking' junior counsel duties formerly assigned to Murphy and [assigning] those duties to the 'new attorney' that BSC had budgeted for the International Law Department in 2005," *id.* ¶ 62(d);

- "engaging in discussions with BSC employment attorneys about how BSC could 'help' Murphy leave BSC," *id.* ¶ 62(e); and

- "creating, permitting and failing to intervene to prevent an environment hostile to Murphy in retaliation for Murphy's formal internal complaint by [(a)] disparaging Murphy, and by refusing to speak about her concerns privately when asked, . . . [(b)] excluding Murphy from meetings Murphy had formerly been invited to attend [and (c)] announcing to Murphy's colleagues at Murphy's graduation party that [the Head of the International Law Department] intended to hire a 'new attorney.'" *Id.* ¶ 62(f)-(h).

On their face, these claims make no sense—neither Paragraph 60 nor any other portion of the Amended Complaint references an agreement by BSC to do anything, let alone "hire Murphy for a 'new attorney' position"; refrain from "creating a hostile work environment"; refrain from "striking junior counsel duties formerly assigned to Murphy"; or refrain from "engaging in discussions . . . about how BSC could 'help' Murphy leave BSC." Further, even if Ms. Murphy had alleged such an agreement, it would fail to state a claim upon which relief could be granted and it would be barred by the statute of frauds and the statute of limitations.

---

[4] This claim is entirely duplicative of the claim in Paragraph 62(a) that BSC "refus[ed] to hire Murphy for a 'new attorney' position," except that it adds facts suggesting discrimination and/or retaliation. Absent a promise by BSC to refrain from discrimination and/or retaliation, which Ms. Murphy does not allege, these added facts are irrelevant.

8

*1.     Ms. Murphy Fails to Plead a Contract Between Her and BSC*

"To allege an implied-in-fact contract, a plaintiff must plead the elements of an express contract, including consideration, mutual assent, and damages." *Katz v. Pershing, LLC*, --- F. Supp. 2d ---, 2011 WL 3678720, *5 (D. Mass. 2011); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent."). The "promise" sought to be enforced is "[a]n essential element in the pleading and proof of a contract claim." *Kiely v. Raytheon Co.*, 914 F. Supp. 708, 712 (D. Mass. 1996). The putative promise must be sufficiently "definite and certain" in its terms to enforceable. *Id.*

Here, Ms. Murphy has failed to plead a definite and certain promise by BSC that would be breached by the acts described in Paragraph 62. She alleges in Count III that an implied contract was created "whereby [she] would successfully complete her law degree, during which time BSC would receive the benefit from Murphy's legal studies by receiving work regularly performed by a junior attorney, while compensating Murphy as a legal secretary." Am. Compl. ¶ 60. This allegation does not refer to <u>any</u> promise by BSC. Rather, it refers only to a vague promise by Ms. Murphy to complete her law degree successfully and a related benefit flowing to BSC as a result—namely, the receipt of attorney-level work at legal secretary rates. Such an allegation does not plead an agreement between BSC and Ms. Murphy. *See Frankina v. First Nat'l Bank of Boston*, 801 F. Supp. 875, 883-84 (D. Mass. 1992) (dismissing contract claim where plaintiff failed to plead legal detriment to promisee or corresponding benefit to promisor).

The document cited in Paragraph 60 in support of the supposed "Agreement" between Murphy and BSC is an October 11, 2000 internal memorandum from Mr. Edmondson to Claudia Gilman, the head of the International Law Department. That memorandum is similarly devoid of any definite and certain promise by BSC to Ms. Murphy. *See* Am. Compl., Ex. A. The

9

memorandum contains a recommendation by Mr. Edmondson that BSC offer to reimburse Ms. Murphy for the cost of her LSAT course.  *See id.*  It also contains a statement by Mr. Edmondson, "I would strongly recommend Lisa to BSC as an international attorney upon her completion of her legal studies."  *Id.*  A note by "Claudia" at the top of the letter states, "Paul—This recommendation has my full support.  We do have available funds in our ILD 2000 budget.  We appreciate your endorsement, please."  *Id.*  A second note by "P." states, "Claudia—I agree with you and support [Mr. Edmondson's] recommendation."  *Id.*  None of these statements is a promise to Ms. Murphy at all, let alone a definite or certain promise to promote her to an attorney position or to refrain from the other acts described in Paragraph 62.  *See Kiely*, 914 F. Supp. at 712 ("[The promise] may not be simply an expression of present intention, or a statement that merely gives rise to a hope or expectation on the part of the promisee.").

Ms. Murphy's allegation in Paragraph 11 that Mr. Edmondson told her that BSC had allocated funds to hire a new attorney in 2005, and informed her "That is your job," also does not allege any definite or certain promise by BSC.  An employer's vague assurances of secure and continued employment do not create a contract for future employment.  *See Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 287 (D. Mass. 1987) ("The promise of secure and continued employment . . . is vague and general. It is not a representation of employment of a specific period.  Consequently plaintiff remained an employee at will."); *Fernandes v. The Talbots, Inc.*, No. 043979, 2005 WL 1009749, at * 3 (Mass. Super. Ct. Mar. 18, 2005) (store manager's alleged statement, "just stay home everything is alright, don't worry about it," insufficient to create a promise to hold plaintiff's position for her while she was ill).  Ms. Murphy apparently concedes this point, as she styles Mr. Edmondson's purported statement in Paragraph 11 as a "representation," not a promise.  *See* Am. Compl. ¶ 12.

10

In short, Ms. Murphy asserts that an implied contract was created between her and BSC, but she fails to assert definite and certain promises by BSC as components of that contract. For this reason alone, her contract claims should be dismissed. *See Cataldo v. Zuckerman*, 20 Mass. App. Ct. 731, 737 (1985) (an alleged agreement must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained); *see also Debnam v. FedEx Home Delivery*, No. 10-11025-GAO, 2011 WL 1188437, at *1 (D. Mass. Mar. 31, 2011) (dismissing plaintiffs' contract claim where plaintiffs did not, among other things, present the terms of the contract or explain what obligations were imposed on each of the parties).

### 2. *The Contract that Ms. Murphy Attempts to Assert Fails to State a Claim Upon Which Relief Can Be Granted*

Even aside from her failure to allege sufficiently definite and certain terms to create a contractual obligation, Ms. Murphy has failed to allege that the "Agreement" promised employment other than on an at-will basis, rendering her claims of "breaches" in Paragraph 62 unactionable. "As a general rule, where an employment contract, be it express or implied, contains no definite period of employment, it establishes employment at will." *Jackson v. Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988); *see also Treadwell*, 666 F. Supp. at 287-88 ("Plaintiff has not alleged that [his employer] promised that termination of employment would occur only for just cause, or that the employment was for a specific period. The employment contract therefore remained terminable at will . . . ."). "Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all." *Jackson*, 403 Mass. at 9. Liability may be imposed on an employer for termination of an at-will employee only if the employee is terminated from employment to avoid paying future compensation for past services, *see Fortune v. Nat'l Cash*

*Register Co.*, 373 Mass. 96, 104-05 (1977), or for a reason that violates a clearly established public policy, *see King v. Driscoll*, 418 Mass. 576, 582-83 (1994).[5]

Because Ms. Murphy has not alleged an agreement to employ her other than on an at-will basis, BSC could have terminated her employment at any time and for any reason, even if it had promoted her to an attorney position. *See Jackson*, 403 Mass. at 9 (describing nature of at-will employment); *Carroll*, 294 F.3d at 240-41 (affirming dismissal of claims that an employer breached its "promises" not to demote plaintiff or reduce his compensation, where plaintiff failed to allege any employment agreement beyond an at-will employment relationship). Just as a termination of an at-will employment relationship would not give rise to damages, a breach of a promise to employ an employee in an at-will employment relationship would not give rise to damages. Absent damages, there is no contract cause of action. *See Katz*, 2011 WL 3678720, *5 (stating the requirement that damages must be pleaded to state a claim for breach of contract).

Ms. Murphy cannot rely on her allegations of a hostile environment to save her claim. A claim of an attempted interference by BSC with a supposed promise to employ her through creating a hostile environment is nothing more than an alleged attempted but unsuccessful termination. Again, as an at-will employee Ms. Murphy was subject to termination of employment at any time and for any reason. A failed "attempt" to terminate her employment through "hostile" conduct is no more actionable than the alleged failure to promote her. *See Carroll*, 294 F.3d at 240-41 (affirming dismissal of claims that an employer breached its employment contract with plaintiff by demoting plaintiff and reducing his compensation, where plaintiff failed to allege any employment agreement beyond an at-will employment relationship). Because Ms. Murphy does not make any allegation that

---

[5] The public policy exception is narrow. *See King*, 418 Mass. at 582-83. "[A]n employee must be able to point to some clearly defined and well established public policy that is threatened by the employer's action." *Glaz v. Ralston Purina Co.*, 24 Mass. App. Ct. 386, 389-90 (1987). "Employees have a claim for wrongful discharge where the termination is in retaliation for performing an important and socially desirable act, exercising a statutory right, or refusing to commit an unlawful act." *Id.* at 390.

would remove her from the at-will employment context, her contract claims should be dismissed. *See id.*

### 3. The Contract that Ms. Murphy Attempts to Assert Would Be Barred by the Statute of Frauds

A contract that cannot be performed within one year of the making of the contract is unenforceable unless evidenced by a written memorandum containing the essentials of the contract. *See* Mass. Gen. Laws ch. 259, § 1 ("No action shall be brought . . . [u]pon an agreement that is not to be performed within one year from the making thereof . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ."). This rule applies equally in the employment context. *See Irving v. Goodimate Co.*, 320 Mass. 454, 458 (1946) ("The plaintiff's contract of employment was for more than a year and was unenforceable unless evidenced by a written memorandum containing the essentials of the oral contract."); *see also Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991) (on a motion to dismiss, ruling that statute of frauds defeated plaintiff's claim where plaintiff alleged breach of an oral employment contract that could not be performed within one year). Indeed, "the employment relationship is as fertile as any in producing misunderstandings, inchoate arrangements, faulty memory, and high emotions, the very human failings which the Statute of Frauds are traditionally designed to reduce . . . ." *Hall v. Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 91 (1987).

Here, even if Ms. Murphy had properly alleged an otherwise enforceable agreement between her and BSC, that contract could not have been performed within a year. Ms. Murphy's allegations of a contract are based on statements by Mr. Edmondson. *See* Am. Compl. ¶¶ 11-14. To the extent that she may attempt to piece together a contract from various statements (an attempt that is not supported by the allegations in the Amended Complaint), it would be an alleged contract to employ

13

her once she finished law school.  *See id.*, Ex. A. ("I would strongly recommend Lisa to BSC as an international attorney upon her completion of her legal studies.").[6]  Ms. Murphy acknowledges that Mr. Edmondson stopped working for BSC in April 2004.  *See* MCAD Compl. ¶ 8.  Therefore, any alleged contract resulting from Mr. Edmondson's purported statements must have been formed in or before April 2004.  Ms. Murphy did not graduate from law school until May 2005.  *See id.* ¶ 9 (alleging that Ms. Murphy finished law school in May 2005).  Therefore, there was more than a year from the formation of any contract until Ms. Murphy could have performed it.  Because any contract to employ Ms. Murphy could not have been performed within one year of its formation, the supposed "Agreement" referenced in Count III is unenforceable under the statute of frauds.  *See* Mass. Gen. Laws ch. 259, § 1.  For this further reason, the contract claims should be dismissed.  *See Powers*, 926 F.2d at 111 (granting motion to dismiss claim of breach of an oral employment contract that could not be performed within one year).

        4.      *Ms. Murphy's Contract Claims Are Also Barred by the Statute of Limitations*

A claim of breach of the supposed "Agreement" is also time barred.  Chapter 260, § 2 of the Massachusetts General Laws mandates that "[a]ctions for breach of contract must be commenced within six years of when the cause of action accrues."  Mass. Gen. L. ch. 260, § 2.  A repudiation of a contractual obligation begins the running of the six year limitations period.  *See Gordon v. Southgate Park Corp.*, 341 Mass. 534, 537-38 (1960); *Delorafano v. Delafano*, 333 Mass. 684, 688 (1956); *Barber v. Fox*, 36 Mass. App. Ct. 525, 527 (1994).  Ms. Murphy filed her original complaint in this action on July 7, 2011.  Thus any repudiation that occurred before July 7, 2005 would render her breach of contract claim untimely.

---

[6] This writing itself is not a basis for avoiding the statute of frauds, as it is an internal memorandum not directed to Ms. Murphy and setting forth merely Mr. Edmondson's recommendation rather than a commitment by BSC.

Ms. Murphy alleges that in her "2004 annual review," she was told that she would not be promoted to an attorney position. Am. Compl. ¶¶ 21, 22. Unless she alleges that her 2004 annual review was conducted after July 7, 2005, that statement would render her claim to be untimely.

Even aside from the statement in her annual review, Ms. Murphy became aware by May 2005 that BSC would not hire her as an attorney. *See* MCAD Compl. ¶ 9 ("In May 2005, Ms. Murphy graduated from law school and inquired about BSC hiring her as an attorney. Ms. Murphy's supervisor informed her at that time that the director of the legal department would not hire her as an attorney."). The statement that BSC "would not hire her as an attorney" was both a repudiation and a breach. By May 2005, then, Ms. Murphy knew of the repudiation and breach of the alleged "Agreement." She had six years from that time, or until May 2011, to bring a contract action on that basis. Because Ms. Murphy did not file her original complaint until July 2011, her entire implied contract claim should be dismissed. *See DiGregorio v. Commonwealth*, 10 Mass. App. Ct. 861, 862-63 (1980) (affirming dismissal of time-barred contract claim).[7]

**B.    The Good Faith and Fair Dealing Claims Also Fail to State a Claim Upon Which Relief Can Be Granted**

Generally, absent a properly pleaded contract, a plaintiff cannot sustain a claim for breach of the implied covenant of good faith and fair dealing. *See Smith v. Jenkins*, 718 F. Supp. 2d 155, 170 (D. Mass. 2010) ("Absent a contract, there can be no violation of the covenant of good faith and fair dealing.") (citing *Mass. Eye & Ear Infirmary*, 412 F.3d at 230). For the reasons stated above, there is

---

[7] Even aside from the fact that the running of the limitations period is triggered by a repudiation, it is clear that the statute of limitations has run. The fairest reading of the Amended Complaint is that there was only one open attorney position for which Ms. Murphy claims she should have been hired. *See* Am. Compl. ¶¶ 20 (only alleged "inquiry" regarding an attorney position was just after Ms. Murphy completed her law degree); 22 (during her annual review in 2005, Ms. Murphy was allegedly informed that "BSC would not promote Murphy to an attorney position"); 31 ("Gilman's failure to consider Murphy for an open attorney position upon completion of her legal studies was in bad faith"); *see also id.*, Ex. A (referencing one "Counsel" opening under "Hiring Manager" Claudia Gilman). That specific position was denied to Ms. Murphy in May 2005. *See* MCAD Compl. ¶ 9. Since Ms. Murphy has not alleged additional attorney openings before she became unable to work, any claim based on her nonhire is time barred.

15

no properly pleaded claim of a contractual obligation. Because there is no contract, there cannot be an implied covenant within that contract.[8]

Although far from clear, it may be that Ms. Murphy is attempting to assert a breach of the implied covenant of good faith and fair dealing inherent in her employment relationship with BSC. BSC readily acknowledges that a covenant of good faith and fair dealing is implied into every at-will employment relationship. *See Frankina*, 801 F. Supp. at 883-84. However, that covenant only supports an action in two specific contexts: (1) where an employer has unjustly denied compensation for past services and (2) where an employer terminates an employee in violation of a clearly established public policy. *See id.* Neither is applicable here.

Ms. Murphy has not alleged the unjust denial of compensation for past services. She also has not alleged a wrongful termination. For these reasons alone, Count IV fails. But even if the "breaches" listed in Count IV could be seen as breaches of the covenant of good faith and fair dealing inherent in at-will employment relationships, Count IV would still fail. Massachusetts courts will not provide a remedy for breach of the implied covenant of good faith and fair dealing where a statutory remedy is available to the plaintiff. *See Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985) ("We think that where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme."); *see also Frankina*, 801 F. Supp. at 883-84 (describing limitations to the implied covenant cause of action). Under this rule, discrimination and retaliation claims that could

---

[8] Ms. Murphy's further assertions in Count IV regarding a supposed contract do not bring her any closer to pleading adequately an implied contract claim. Indeed, Count IV is indecipherable. It describes an intended "benefit" to Ms. Murphy from "the development of the parties' respective goodwill and interest in the attainment of a law degree without damaging Plaintiff's rights to job security, lost wages, reputation, professional opportunities, and a work environment free from discrimination and retaliation." Am. Compl. ¶ 65. It also describes "the [purported] reason Murphy invested countless personal hours developing her knowledge and applying her expertise in the types of contracts and litigation BSC junior attorneys routinely handle": "because she wanted to maximize the value of her legal education by completing her law degree while working for BSC." *Id.* ¶ 67. These statements do not allege an agreement with BSC. *See* Part III.A.1 *supra*.

16

have been brought under Chapter 151B cannot be brought as contract claims. *See Carroll*, 294 F.3d at 242 n.10 ("To the extent that [plaintiff's] breach-of-contract claim reduces to an alleged violation of the implied covenant of good faith and fair dealing implicit in an at-will employment agreement, such a claim would clearly be barred by the exclusive discrimination remedy of Chapter 151B."); *Frankina*, 801 F. Supp. at 883-84 (discrimination and retaliation claims covered by Chapter 151B cannot be brought as claims for breach of the implied covenant of good faith and fair dealing). Likewise, discrimination and retaliation claims that could have been brought under the Family Medical Leave Act cannot be brought as contract claims. *See Carter v. Tropicana Prod. Sales, Inc.*, No. 07-10921-RWZ, 2008 WL 190791, at *2 (D. Mass. Jan. 4, 2008) ("This tenet [that an at-will employee has an action for wrongful discharge only where there is no other way to vindicate public policy] applies whether the remedy is vindicated by a state or federal statute."); *see also Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 46 (1st Cir. 1999) (applying *Melley* and concluding that the federal remedy contained in the Federal Labor Standards Act precluded a cause of action for wrongful termination).

Here, Ms. Murphy's claims in Count IV are allegations of discrimination and retaliation on the basis of disability and medical leave. *See* Am. Compl. ¶¶ 68(a) (seeking contractual relief for a refusal to engage in the interactive process, and an unlawful termination following disability leave); 68(b) (alleging a failure to rehire following medical leave and a request for disability accommodations); *see also id.* ¶ 65 (basing her request for relief in Count IV on BSC's alleged failure to provide "a work environment free from discrimination and retaliation"). Chapter 151B and the FMLA provide remedies for such claims. *See* Mass. Gen. L. ch. 151B, § 4(4), 4(4A), 4(16) (creating causes of action for discrimination and retaliation on the basis of handicap); 29 U.S.C. § 2615(a), (b) (creating a cause of action for interference with rights provided by the FMLA and

17

discrimination and/or retaliation against employees who oppose any practice made unlawful by the FMLA); 29 C.F.R. § 825.220(c) ("employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions"); *see also Wong v. Resolve Tech.*, No. 10-11642-DJC, 2011 WL 3157198, at *7 (D. Mass. July 25, 2011) ("[T]he public policy against discrimination on the basis of disability is already protected by the comprehensive legislative scheme, M.G.L. c. 151B. The remedial scheme in c. 151B precludes the creation of any common law claim based on the same public policy."). Because there are statutory remedies available for the claims in Count IV, Ms. Murphy cannot pursue them as implied covenant claims. The claims should be dismissed. *See Carroll*, 294 F.3d at 242 n.10 ("To the extent that [plaintiff's] breach-of-contract claim reduces to an alleged violation of the implied covenant of good faith and fair dealing implicit in an at-will employment agreement, such a claim would clearly be barred by the exclusive discrimination remedy of Chapter 151B." (citation omitted)); *Frankina*, 801 F. Supp. at 883-84 (dismissing implied covenant claim where a statutory remedy was available to plaintiff); *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 555-58 (1996) (same).

## CONCLUSION

For the foregoing reasons, BSC respectfully requests that this Court dismiss with prejudice the portion of Ms. Murphy's statutory retaliation claim that is predicated on her 2004 internal sexual harassment complaint, and also dismiss with prejudice her contract claims.

Dated: November 7, 2011  Respectfully submitted,

BOSTON SCIENTIFIC CORPORATION

By its attorney,

/s/ Robert M. Hale
Robert M. Hale (BBO # 217170)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
E-Mail:  rhale@goodwinprocter.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 7, 2011.

November 7, 2011                                                       /s/ Robert M. Hale